Peter Strojnik, 6464
THE LAW FIRM OF PETER STROJNIK
3030 North Central Avenue, Suite 1401
Phoenix, Arizona 85012
Telephone: 602-524-6602
Facsimile: 602-297-3176
E-mail: Strojnik@aol.com
Attorney *pro hac vice* for Defendants (application pending)

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| State of Oregon ex rel Hardy Myers, Attorney General for the State of Oregon, | NO. 08-6231-TC |
| Plaintiff, | **NOTICE OF REMOVAL** |
| vs. | (Lincoln County Circuit Court No.: 082810) |
| Simple.Net, Inc. f/k/a Dial Up Services, Inc d/b/a/ Simple.Net, an Arizona Corporation | |
| Respondent. | |

    Simple.Net, Inc., as Defendant in Lincoln County Circuit Court Cause Number 082810 ("State Court Case"), hereby gives notice of removal the State Court case to the United States District Court for the District of North Dakota.

    Defendant is entitled to removal of this action pursuant to 28 U.S.C. §1441(a) and (b), nonexclusively, for the reasons that (1) the United States District Court has original jurisdiction over this matter [28 U.S.C. § 1441(a)]; and (2) Respondent's claim or right asserted herein arises under the claim or right arising under the Constitution, treaties or laws of the United States [28 U.S.C. § 1441(b)].

This Notice is timely pursuant to 28 U.S.C. §1446 (b) for the reason that the Plaintiff's Verified Petition for Provisional Process and Order to Show Cause, along with ancillary filings, (Exhibit 1) setting forth the claim for relief upon which such action or proceeding is based was received by counsel within 30 days of the filing of the Notice of Removal, to wit, July 3, 2008.

This Notice is accompanied by the Plaintiff's Verified Petition for Provisional Process and Order to Show Cause, along with ancillary filings cumulatively appended hereto as Exhibit 1.

RESPECTFULLY submitted this 23rd day of July, 2008.

Peter Strojnik
Attorney *pro hac vice* for Respondent
(application pending)

1

2

# CERTIFICATE OF SERVICE

3

4   The original of the foregoing mailed
    This 23rd day of July, 2008, to the
5   Clerk of the United States District Court
    District of Oregon
6   Wayne L. Morse U.S. Courthouse
    405 East Eighth Avenue, Room 2100
7   Eugene, OR 97401

8   Copies mailed to:

9   Thomas K. Elden, Esq.
    Senior Assistant Attorney General
10  Oregon Department of Justice
    1162 Court Street, N.E.
11  Salem, Oregon 97301-4096

12

13  And to:

14  And a courtesy copy to:
    The Honorable Sheryl Bachart
15  Lincoln County Circuit Court
    P.O. Box 100
16  Newport, Oregon 97365
17  (w/o attachments)

18

19

20  _____

21

22

23

24

25

Certified to be a true and correct co
of the original and of the whole there

*Assistant Attorney General*

STATE OF OR
LINCOLN COUN
FIL

2008 JUL -3 AM 11: 38

ENTERED

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF LINCOLN

| | |
|---|---|
| STATE OF OREGON, ex rel HARDY MEYERS, Attorney General of Oregon,<br><br>      Plaintiff,<br><br>      v.<br><br>SIMPLE.NET, INC., f/k/a DIAL-UP SERVICES, INC., d/b/a SIMPLE.NET, an Arizona Corporation.<br><br>      Defendant. | Case No. 082810<br><br>COMPLAINT ALLEGING VIOLATIONS OF OREGON'S RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT<br><br>[ORS 166.715 *et seq.*]<br><br>[CLAIM NOT SUBJECT TO MANDATORY ARBITRATION] |

This COMPLAINT alleges a claim for relief based upon violations of Oregon's

Racketeer Influenced and Corrupt Organization Act (ORICO), ORS 166.715 to ORS 166.735.

Plaintiff, STATE OF OREGON, (hereinafter "PLAINTIFF") for its COMPLAINT alleges that at

all times material herein:

**Parties**

1.

HARDY MYERS is the Attorney General for the State of Oregon and sues in his official

capacity pursuant to ORS 166.725(5).

2.

DEFENDANT SIMPLE.NET, INC., f/k/a DIAL-UP SERVICES, INC., d/b/a

SIMPLE.NET, (hereinafter "Simple.net"), is an Arizona Corporation operating from Mesa,

Arizona and conducting business in Oregon, including Lincoln County, under the name of

Page 1 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

1    Simple.net, and is a "person" under ORS 166.720.   It acts through its officers and agents and

2    employes.

3                                **Statement of Jurisdiction**

4                                          3.

5         This Court has personal jurisdiction over DEFENDANT pursuant to ORCP 4 A(4) and

6    ORCP 4 D(1) as DEFENDANT engaged in substantial and not isolated solicitation activities

7    within this state.

8                                **General Summary of Action**

9                                          4.

10        Beginning on or about January 24, 2003, and continuing until approximately November

11   25, 2005, DEFENDANT and others in concert with DEFENDANT in an ENTERPRISE

12   described later herein caused at least 195,480 solicitations to be mailed to Oregon businesses and

13   non-profits.   These solicitations were to sell DEFENDANT's dial-up internet access service and

14   were comprised of "solicitation" checks also known as "activation" or "live" checks (hereinafter

15   generally "checks").   Deposit of a check by the recipient was alleged by DEFENDANT to create

16   a contract for DEFENDANT'S internet access service.   While solicitations ceased in

17   November, 2005 after a warning issued to DEFENDANT by the Oregon Department of Justice

18   in September 2005, collections of money from deceived Oregon businesses and non-profits

19   continued and apparently still continue.   DEFENDANT has resisted efforts to discover the

20   names of its Oregon customers.

21                                          5.

22        The checks were for small amounts, initially $3.17 and later $3.25, and contained

23   the recipient's phone number along with another numerical string or possible tracking number in

24   the "MEMO" field in the lower left hand corner of the check, for example "503-375-

25   0035/V1183966". The face of the check was printed with a predominantly blue gradient, fading

26   towards the bottom of the document. Earlier checks were without pattern but later checks were

Page 2 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

1   designed with a faint pattern containing the words "INTERNET ACCESS" with solid white
2   bold font and the word "SOLICITATION" in thin white outlined font, repeating across the face
3   of the document. The effect of this pattern on the later checks was to present "INTERNET
4   ACCESS" in a faint but more prominent manner, while "SOLICITATION" was virtually
5   indistinguishable from the background. Nothing else was present on the face of the check that
6   suggested it was a solicitation and nothing at all on the front of the check suggested that
7   depositing it would make the check more than a check or solicitation and create for the recipient
8   an ongoing monthly obligation to pay for dial up internet access service. It was not clear and
9   conspicuous that the check was other than perhaps a rebate or a small amount of money that
10  might be a refund resolving some minor debt.

11                                          6.

12          A tear off sheet or stub attached to the bottom of the check usually contained in small
13  font "Internet Access Solicitation". The tear off in an early version at the very bottom in small
14  font also said "See Terms of Offer and back of Sign-up Check"; later versions omitted this
15  language but added "Discount Incentive" in small font. The tear off also contained the name of
16  the business or non-profit, sometimes its phone number, and a repeat of the numerical string
17  from the memo portion of the check. There was more than ample space on the tear off or stub
18  for DEFENDANT to make clear and conspicuous the consequence of depositing the check but
19  DEFENDANT did not do so.

20                                          7.

21          The back of the check contained, in extremely small font, above the place for signature or
22  endorsement, a statement of 8 to 10 lines that by "depositing" the check the recipient signed up
23  for DEFENDANT'S internet service. Earlier versions of the statement said the recipient agreed
24  to pay $16.95 a month "preferably billed on my telephone bill" and later versions said the
25  recipient agreed to pay $19.95 per month and authorized Dial-Up Services, Inc. to "bill such fees
26  on my telephone bill or by ACH debits the company's bank account into which this check is

Page 3 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

1  deposited or by other methods…"   The statement described a refund policy of a full refund

2  within 90 days.

3                                                      8.

4         The check was delivered to the recipient by US Mail in a plain white envelope with two-

5  see through windows permitting the upper left and lower left of the actual check to serve as

6  return address and delivery address respectively.  Between the windows in large bold black font

7  were the words "CHECK ENCLOSED" in capital letters.   Earlier envelopes were also plain on

8  the inside but a later version of the envelope had a repeating pattern "Simple.Net Internet

9  Access" on the inside.   The check and its tear off were folded at the dividing line.  If a recipient

10  pulled out the check only the front of the check was visible.  If the tear off were thrown away

11  only the small font statement on the reverse of the check gave any indication that by depositing

12  the check an obligation was allegedly incurred.

13                                                      9.

14         Checks sent into Oregon included a separate four and a half by seven and a half inch

15  sheet providing information generally in small font about the check and the service with "terms"

16  on the reverse side.  In some earlier mailings into Oregon in larger font a second sheet provided a

17  disclaimer about Telecommunications Services and a separate telecommunications disclaimer for

18  the state of Minnesota.

19                                                     10.

20         Once the check was deposited, DEFENDANT caused the recipient to be billed monthly.

21  Billing was generally through the recipient's Local Exchange Carrier ("LEC") whereby charges

22  would appear on the recipient's phone bill with a charge placed there by a billing aggregator

23  (usually Payment One, a subsidiary of The Billing Resources d/b/a Integretel).  In other cases the

24  recipient was billed through Automated Clearing House ("ACH") charges again by the billing

25  aggregator whereby the amount was debited directly from the recipient's checking account.  In

26

Page 4 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

1   some cases if unable to place charges on the phone bill or make ACH charges to a recipient's

2   checking account, DEFENDANT mailed invoices to the recipient.

3                                          11.

4          If the check was deposited by the recipient, a follow up "Welcome Letter" with general

5   instructions how to access the internet service was allegedly sent to the recipient by

6   DEFENDANT.   A number for more information or "to cancel" was provided.  Customers, either

7   small businesses or non profits, who had deposited the check in normal course and discarded or

8   disregarded any accompanying information also did not recognize, assuming it was sent,

9   anything about the subsequent welcome mailing sufficient to open it and be aware of its contents.

10                                         12.

11         DEFENDANT was permanently prohibited by a Federal District Court in Arizona in a

12  2001 settlement with the Federal Trade Commission from failing to disclose, clearly and

13  conspicuously on the front of any solicitation check or on the front of any stub attached to the

14  check a statement notifying the payee that the check is part of a "solicitation" or that by cashing

15  the check, the payee would become obligated to pay for a good or service.   Further,

16  DEFENDANT was prohibited from failing to disclose, again clearly and conspicuously, a

17  statement above the endorsement line on the back of the check that notified the payee of the

18  amount and frequency of the charge that would be imposed if the check were deposited or

19  endorsed.

20                                         13.

21         From the experience of Oregon small businesses and non profits the required Federal

22  disclaimers were not clear and conspicuous and failed to alert many Oregon recipients of the

23  charges that would be incurred or that the recipient was agreeing to pay for a service that the

24  recipient did not want or need.   Checks sent to businesses are often deposited with minimal

25  regard for accompanying, apparently useless, information and sometimes deposited without

26  signature endorsement.   Nationally less than three (3) percent of those recipients who were in

Page 5 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

1    fact billed and who paid for at least one month of service actually used the service at least once.

2    ~~Nationally less than two (2) percent of those who deposited the check and who DEFENDANT~~

3    attempted to bill including those who were in fact billed actually used the service at least once.

4    The percent of those using the service was still lower when eliminating apparent company

5    employes in Arizona who used the service as DEFENDANT did not solicit customers in its

6    home state of Arizona.    In Oregon for the years 2003, 2004 and 2005 a total 2162 customers

7    deposited the check but only approximately 21 or less than one (1) percent ever used the service

8    from Oregon and were presumably for the most part Oregonians.    Customers were billed for a

9    service only a fraction ever attempted to use and the vast remainder apparently did not realize

10    they had contracted for internet service when they cashed or deposited the solicitation check.

11    Thus DEFENDANT'S check method of solicitation was inherently deceptive.

12                                         14.

13        DEFENDANT relied on recipients depositing the check without appreciating the

14    consequence of accepting a check for $3.25 or less and incurring a yearly obligation of sixty or

15    seventy times that amount.    Because of the nature of billing, i.e. generally through the phone

16    bill or checking account, DEFENDANT counted on recipients not recognizing the ongoing

17    nature of the deception.    Many responsible Oregon small businesses and non profits paid bills

18    for months without realizing billing was occurring and ongoing.    Further, the amount of the

19    check, either $3.17 or $3.25, caused recipients to consider the check only a small refund, rebate

20    or receivable.

21                                         15.

22        When recipients who deposited the checks subsequently discovered they were being

23    billed attempted to or did cancel DEFENDANT'S "service" some were refunded by

24    DEFENDANT but others were not.   However DEFENDANT'S solicitation was deceptive

25    whether a recipient recognized it at once, did not recognize it until later or never recognized it.

26    ///

Page 6 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

1                                    16.

2          Some recipients of the checks who had been billed on their phone bill only recognized

3    they were being billed for an unwanted service when they received an actual invoice or were

4    notified that their bank account was now being charged for DEFENDANT'S service years after

5    depositing the checks.  These recipients had previously been subject to Local Exchange Carrier

6    or LEC billing through their phone bills and did not become aware of the charges until

7    DEFENDANT converted their billings to invoices or automatic debits from their checking

8    account because of concerns raised by the phone companies.   Frequently, when these customers

9    contacted DEFENDANT to cancel service and request refunds, DEFENDANT or

10   DEFENDANTS' agents, and other persons involved in the ENTERPRISE described herein

11   failed to inform these customers that the billings had existed on their phone bills and that these

12   customers had, in fact, paid hundreds of dollars more than they suspected.

13                                   17.

14         Of 195,480 solicitations mailed into the State of Oregon during 2003, 2004 and 2005 a

15   total 2162 Oregon businesses and non-profits deposited the checks.   Of the 2162 who deposited

16   the checks and thus allegedly contracted with DEFENDANT for service, 1806 or 83% sought to

17   cancel or revoke acceptance of the purported contract prior to January 1, 2006.   Both recipients

18   of checks who immediately thought the checks were deceptive as well as those who deposited

19   the checks and later realized the deception complained to the Oregon Department of Justice or

20   directly to DEFENDANT.

21                                   18.

22         In January 2006 DEFENDANT'S counsel represented there were approximately 500

23   Oregon customers paying DEFENDANT monthly.  In March 2006 this number was clarified by

24   counsel as 496.  Counsel then represented a year later in March 2007 that at some intervening

25   time, because of concerns raised by the Oregon Department of Justice, that DEFENDANT had

26   voluntarily sent a letter offering a refund to whatever actual number of Oregon activation check

Page 7 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

1    customers were then still paying.   DEFENDANT'S counsel further represented that 40

2    customers had responded to this mailing but that some allegedly remained as customers.   While

3    the form of the envelope is not known to PLAINTIFF, even if customers who did not know they

4    were customers were not alert enough to open it, the fact that 40 out of some number under 500

5    would immediately ask for a refund further demonstrates that DEFENDANT'S solicitations did

6    not provide clear and conspicuous information for an informed decision and were in fact

7    designed to be and were inherently deceptive.   Given the extremely low number of persons

8    accessing the internet via DEFENDANT'S service from Oregon it is apparent others receiving

9    the letter simply did not open the envelope.

10                                          **CLAIM FOR RELIEF**

11                                             **Racketeering**

12                                                  19.

13           PLAINTIFF, for its claim for relief, realleges and incorporates paragraphs 1. through 18.

14    as though fully set forth herein.

15                                               **Enterprise**

16                                                  20.

17           DEVAL JOHNSON has been DEFENDANT'S President and Secretary since 1999.

18    He is the company's sole director and officer.   In 2001, JOHNSON, as an officer of

19    DEFENDANT, authorized DEFENDANT to conduct interstate activation check solicitation

20    mailings and monitored DEFENDANT'S business practices.   JOHNSON was also a director

21    and share holder in another Arizona company, YP CORP, formerly YP.Net, Inc.   YP CORP and

22    its predecessor YP.Net, Inc. also used activation check solicitations and similarly to

23    DEFENDANT agreed with the Federal Trade Commission to reform its activation check

24    practices in 2001.   DEFENDANT and YP CORP also were connected by an internet access

25    agreement by which DEFENDANT provided internet access to YP CORP until March 2004

26

Page 8 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

1    when the agreement terminated.    As of March 2004 when DEFENDANT and YP CORP

2    terminated their contract, ANGELO TULLO was the CEO of YP CORP.

3            On May 30, 2004 because of unrelated legal problems TULLO resigned as YP CORP's

4    CEO.    On August 23, 2004 JOHNSON on behalf of DEFENDANT agreed with TULLO and

5    another of TULLO's companies, SUNBELT FINANCIAL CONCEPTS, INC., for SUNBELT to

6    manage the affairs of DEFENDANT.    This agreement was renewed August 3, 2006.

7            DEFENDANT SIMPLE.NET, INC., DEVAL JOHNSON, SUNBELT FINANCIAL

8    CONCEPTS, INC. and ANGELO TULLO and others unnamed were associated in fact to engage

9    in a pattern of racketeering activity, constituting an ENTERPRISE, and in violation of ORS

10   166.720(3).

11                       **Pattern of Racketeering Activity**

12                                    21.

13           While associated with the ENTERPRISE described in paragraph 20. above,

14   DEFENDANT conducted and participated directly and indirectly in said ENTERPRISE through

15   a pattern of racketeering activity, constituting of more than two violations, to wit obtaining

16   execution of documents by deception under ORS 165.102, specifically, that behavior alleged in

17   paragraphs 1. through 19.  The conduct alleged in paragraphs 1. through 19. constituted

18   obtaining execution of documents by deception under ORS 165.102 as follows;

19      (a) Because of the inherently deceptive nature of the activation check solicitations and

20          surreptitious billing methods used by DEFENDANT and the ENTERPRISE, the conduct

21          alleged in paragraphs 1. through 19. was done with the intent to defraud or acquire a

22          substantial benefit;

23      (b) Through the conduct alleged in paragraphs 1. through 19. DEFENDANT and the

24          ENTERPRISE obtained by fraud, deceit or subterfuge the execution of written check

25          instruments activating billing and affecting or purporting to affect the pecuniary interest

26

Page 9 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

1         of the persons, to wit Oregon businesses, non profits and individuals, who deposited or

2         cashed the checks; and

3       (c) The obtaining of execution of documents by deception described herein had the same

4         intents, results, victims, methods of commission, and were otherwise interrelated by

5         distinguishing characteristics, including a nexus to the same ENTERPRISE and were not

6         isolated incidents as required by ORS 166.715(4)

7                           22.

8         The obtaining of execution of documents by deception alleged herein is ongoing to the

9   extent any Oregon recipient is still subject to automatic monthly billing caused by

10  DEFENDANT's and the ENTERPRISE's solicitation for dial-up internet access by means of an

11  activation check and the recipient is unaware of any alleged contractual relationship with

12  DEFENDANT.

13                     **Predicate Acts**

14                **Lincoln Beach Sentry**

15                       23.

16         Lincoln Beach Sentry is a supermarket in Lincoln County, Oregon.  In approximately

17  March of 2003 one of DEFENDANT'S checks, which had been mailed to Lincoln Beach Sentry

18  was deposited.  Nobody at Lincoln Beach Sentry intended to or knowingly contracted for

19  DEFENDANT'S dial-up internet service.  At the time, Lincoln Beach Sentry already received

20  internet service through Unified Western Grocers.  From March 13, 2003 through February 14,

21  2007, DEFENDANT billed Lincoln Beach Sentry, through its local telephone bill, $16.95 per

22  month, totaling $813.60, which was unwittingly paid by Lincoln Beach Sentry.  When contacted

23  by Lincoln Beach Sentry, DEFENDANT refused to refund Lincoln Beach Sentry.

24                       24.

25         The conduct of DEFENDANT as described above in paragraph 23., as part of a pattern of

26  racketeering activity, violated ORS 165.102, in that DEFENDANT obtained execution of

Page 10 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

1    DEFENDANT'S check to acquire a substantial benefit, was obtained by deceit or subterfuge and

2    affected Lincoln Beach Sentry's pecuniary interest. The offense continued until cessation of

3    billing by DEFENDANT.

4                                    **Coca Cola Bottling Co.**

5                                              25.

6          The Coca Cola Bottling Company of Oregon has an office in Lincoln City, Oregon. The

7    Company never knowingly contracted for DEFENDANT'S dial-up internet service. At the time

8    the Coca Cola Bottling Company of Oregon (including the Lincoln City Office) already received

9    internet service through a self-sustained network provided by Coca Cola. After the apparent

10   deposit of DEFENDANT'S activation check, during the period beginning in February of 2004

11   and ending in February of 2007, DEFENDANT charged (on the phone bill for the Lincoln City

12   Office) the Coca Cola Bottling Company $16.95 per month, totaling $830.55, which was

13   unknowingly paid by the Coca Cola Bottling Company. The Company was unaware of

14   DEFENDANT'S service, had no need for it, and never used it.

15                                             26.

16         The conduct of DEFENDANT as described above in paragraph 25., as part of a pattern of

17   racketeering activity, violated ORS 165.102, in that DEFENDANT obtained execution of

18   DEFENDANT'S check to acquire a substantial benefit, was obtained by deceit or subterfuge and

19   affected Coca Cola Bottling Co.'s pecuniary interest. The offense continued until cessation of

20   billing by DEFENDANT.

21                                       **Enright**

22                                             27.

23         Brendan Enright, Esq. is an attorney practicing in Aurora, Oregon. Mr. Enright never

24   knowingly contracted for DEFENDANT'S service. Beginning in March of 2004, and ending in

25   approximately April of 2007, through the apparent deposit of DEFENDANT'S activation check

26   DEFENDANT charged Mr. Enright $17.95 per month, on his phone bill, totaling at least

Page 11 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

1    $646.20, which was unknowingly paid by Mr. Enright. In March of 2004, Mr. Enright already

2    received DSL internet service through Canbytel. Mr. Enright was unaware of DEFENDANT'S

3    service, had no need for it, and never used it. When contacted by Mr. Enright, DEFENDANT

4    failed to refund him.

5                                                 28.

6            The conduct of DEFENDANT as described above in paragraph 27. as part of a pattern of

7    racketeering activity, violated ORS 165.102, in that DEFENDANT obtained execution of

8    DEFENDANT'S check to acquire a substantial benefit, was obtained by deceit or subterfuge and

9    affected Mr. Enright's pecuniary interest. The offense continued until cessation of billing by

10   DEFENDANT.

11                                       **Karate for Kids**

12                                                29.

13           Karate for Kids is a martial arts school in Lebanon, Oregon, owned by Angela and John

14   Patton. Karate for Kids never knowingly contracted for DEFENDANT'S dial-up internet

15   service. Beginning in March of 2004, and ending in approximately April of 2007, because of the

16   apparent deposit of one of DEFENDANT'S activation checks DEFENDANT charged Karate for

17   Kids $17.95 per month, on its phone bill, totaling at least $771.85, which was unknowingly paid

18   by Karate for Kids. In March of 2004, Karate for Kids already received internet service through

19   Infinity Internet. Karate for Kids was unaware of DEFENDANTS' service, had no need for it,

20   and never used it.

21                                                30.

22           The conduct of DEFENDANT as described above in paragraph 29., as part of a pattern of

23   racketeering activity, violated ORS 165.102, in that DEFENDANT obtained execution of

24   DEFENDANT'S check to acquire a substantial benefit, was obtained by deceit or subterfuge and

25   affected Karate for Kids' pecuniary interest. The offense continued until cessation of billing by

26   DEFENDANT.

Page 12 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

1                           **Harney County School District**

2                                      31.

3          The Harney County School District operates the Crane Union High School in Harney

4    County, Oregon. The Harney County School District never knowingly contracted for

5    DEFENDANT'S dial-up internet service. Beginning in February of 2004, and ending in

6    approximately April of 2007, DEFENDANT charged the Harney County School District $17.95

7    per month, on the phone bill for the Crane Union High School, totaling at least $646.20, which

8    was unknowingly paid. The charges appeared on the phone bill as a long-distance phone call to

9    "SIMPLENETISP." In February of 2004, the Harney County School District already received

10   internet service through the Harney County ESD. The Harney County School District was

11   unaware of DEFENDANT'S service, had no need for it, and never used it.

12                                     32.

13         The conduct of DEFENDANT as described above in paragraph 31., as part of a pattern of

14   racketeering activity, violated ORS 165.102, in that DEFENDANT obtained execution of

15   DEFENDANT'S check to acquire a substantial benefit, was obtained by deceit or subterfuge and

16   affected Harney County School District's pecuniary interest. The offense continued until

17   cessation of billing by DEFENDANT.

18                          **Cancer Care Resources**

19                                     33.

20         Cancer Care Resources is a non-profit organization located in Portland, Oregon.

21   Cancer Care Resources did not knowingly contract with DEFENDANT for its dial-up internet

22   service. In early 2005, one of DEFENDANT'S checks was mistakenly deposited into Cancer

23   Care Resources' business checking account. At the time, Cancer Care Resources was using

24   Qwest as its internet provider. In June, August, September and October of 2005, DEFENDANT

25   caused $19.95 to be debited from Cancer Care Resources checking account monthly. Cancer

26   Care Resources was unaware of DEFENDANT'S service, had no need for it, and never used it.

Page 13 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

1                                        34.

2            The conduct of DEFENDANT as described above in paragraph 33., as part of a pattern of

3   racketeering activity, violated ORS 165.102, in that DEFENDANT obtained execution of

4   DEFENDANT'S checks to acquire a substantial benefit, was obtained by deceit or subterfuge

5   and affected Cancer Care Resources' pecuniary interest. The offense continued until cessation of

6   billing by DEFENDANT.

7                          **White Horse Coffee and Tea Co.**

8                                        35.

9            White Horse Coffee and Tea Co. ("White Horse") is a small business located in

10  Sutherlin, Oregon. White Horse did not knowingly contract with DEFENDANT for its dial-up

11  internet service. In March 2003, DEFENDANT caused an activation check to be mailed to

12  White Horse in the amount of $3.17. Kristin Lusk, one of the owners of White Horse, deposited

13  that check in April 2003 to the business bank account, believing it to be a refund from the

14  installation of a complicated phone system. In November 2004 White Horse began receiving

15  invoices from DEFENDANT in the amount of $16.95 per month. On January 7, 2005, Ms. Lusk

16  contacted DEFENDANT'S customer service department and attempted to cancel. The customer

17  service representation informed Ms. Lusk that since her inquiry was well after DEFENDANT'S

18  cancellation period, she was "stuck with the service." On February 7, 2005, David MacDonald,

19  another owner of White Horse, contacted DEFENDANT about the invoices. In response

20  DEFENDANT cancelled White Horse's account and wrote off the invoice balance. In October

21  2006 White Horse became aware that for the period from May 2003 through October 2004,

22  DEFENDANT had placed monthly charges of $16.95 on White Horse's phone bill, and that

23  those charges had been unwittingly paid and totaled at least $322.05. Neither DEFENDANT nor

24  its agents mentioned this to Mr. MacDonald or Ms. Lusk in their multiple communications with

25  them.

26  ///

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4333 / Fax: (503) 378-5017

1              36.

2              The conduct of DEFENDANT as described above in paragraph 35., as part of a pattern of

3    racketeering activity, violated ORS 165.102, in that DEFENDANT obtained execution of

4    DEFENDANT'S check to acquire a substantial benefit, was obtained by deceit or subterfuge and

5    affected White Horse Coffee and Tea Co.'s pecuniary interest. The offense continued until

6    cessation of billing by DEFENDANT.

7                            **Additional Predicate Acts**

8              37.

9              In addition to the above-described victims of DEFENDANT and the ENTERPRISE'S

10   marketing scheme, over two thousand other Oregon businesses and non-profits deposited one of

11   DEFENDANT'S and the ENTERPRISE'S activation checks in the period from 2003 to 2006.

12   Most of these recipients never used DEFENDANT'S service and presumably did not want or

13   need the service. Over eighty percent of those who deposited the checks during 2003, 2004 and

14   2005 cancelled the service by spring of 2006. Each time DEFENDANT obtained a recipient's

15   execution of DEFENDANT'S check it was in order to acquire a substantial benefit, was by

16   deceit or subterfuge and affected the recipient's pecuniary interest. Each deposited check

17   transaction constitutes an additional predicate act.

18                                    **Offense**

19             38.

20             By the above-described conduct, DEFENDANT violated ORS 166.720(3) and

21   PLAINTIFF is entitled to a JUDGMENT for civil penalties against the Defendant of not more

22   than two hundred fifty thousand dollars ($250,000.00) pursuant to ORS 166.725(8).

23             39.

24             Pursuant to ORS 166.725(5), PLAINTIFF is entitled to a JUDGMENT for its attorney

25   fees and the costs of investigation and litigation reasonably incurred.

26   ///

Page 15 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

1

40.

2        Pursuant to ORS 166.725(2), PLAINTIFF is entitled to a JUDGMENT for forfeiture by

3    DEFENDANT to PLAINTIFF of all property, real or personal, including money, used in the

4    course of, derived from, or realized through the conduct alleged herein.

5

41.

6        Pursuant to ORS 166.725(1), PLAINTIFF is entitled to a JUDGMENT permanently

7    prohibiting and enjoining DEFENDANT from using activation checks to solicit business in

8    Oregon.

9

42.

10        Pursuant to ORS 166.725(1) PLAINTIFF is entitled to a JUDGMENT permanently

11    prohibiting and enjoining DEFENDANT from billing any Oregon customers through the LEC or

12    ACH billing methods where such customers were initially solicited and sold goods or services by

13    DEFENDANT through its use of activation checks.  To facilitate this objective and that in

14    paragraph 43. PLAINTIFF is entitled within thirty (30) days of entry of judgment if not already

15    provided to receive from DEFENDANT complete customer information on all DEFENDANT'S

16    Oregon customers from January 1, 2003 to the present.  Oregon customers include all customers

17    who paid DEFENDANT any amount of money.

18

43.

19        Pursuant to ORS 166.725(1), PLAINTIFF is entitled to a JUDGMENT requiring

20    DEFENDANT to provide restitution to all currently unreimbursed or partially unreimbursed

21    Oregon businesses, non-profits, or individuals from whom DEFENDANT took money in

22    connection with the conduct described herein.

23                              **PRAYER FOR RELIEF**

24

43.

25        **WHEREFORE**, PLAINTIFF, with respect to its claim for relief prays for relief as

26    follows:

Page 16 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

1    (a) For a JUDGMENT against DEFENDANT pursuant to ORS 166.725(8), for civil

2    penalties of two hundred fifty thousand dollars ($250,000.00) for violation of the Oregon

3    Racketeer Influenced and Corrupt Organization Act plus post-judgment interest at the

4    statutory rate of nine percent (9%) per annum;

5    (b) For a JUDGMENT against DEFENDANT pursuant to ORS 166.725(5), for

6    PLAINTIFF's costs of investigation and litigation reasonably incurred including attorney

7    fees, costs and disbursements;

8    (c) For a JUDGMENT against DEFENDANT pursuant to ORS 166.725(2), for forfeiture

9    by DEFENDANT to PLAINTIFF of all property, real or personal, including money, used

10    in the course of, derived from, or realized through the illegal conduct of DEFENDANT;

11    (d) For a JUDGMENT permanently enjoining, barring, restraining and prohibiting

12    DEFENDANT:

13        1. From any future violations of the Oregon Racketeer Influenced and Corrupt

14            Organization Act, ORS 166.715 *et seq.*

15        2. From soliciting business in Oregon through the use of "live" or "activation"

16            checks, or any other check which when cashed or deposited by the recipient

17            allegedly creates a contractual relationship with DEFENDANT.

18        3. From billing any Oregon customers through the LEC or ACH billing methods

19            where such customers were initially solicited and sold goods or services by

20            DEFENDANT through its use of activation checks. And DEFENDANT cannot

21            bill such customers currently being billed who do not receive and respond

22            positively to a notice from DEFENDANT informing the customer of the

23            customer's current obligation to DEFENDANT and informing the customer that

24            the customer has the option of continuing doing business with DEFENDANT.

25            Such notice must be mailed by First Class Mail in an envelope that states it is

26            from the Court and must be approved by the Court prior to its use. To facilitate

Page 17 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

1    this objective and restitution as ordered herein PLAINTIFF is entitled, if not

2    already provided, within thirty (30) days of entry of judgment to receive from

3    DEFENDANT complete customer information on all DEFENDANT'S Oregon

4    customers who paid DEFENDANT any amount of money from January 1, 2003

5    to the present;

6    (e) For a JUDGMENT against DEFENDANT pursuant to ORS 166.725(1), for

7    restitution to Oregon businesses, non-profits and or individuals from whom

8    DEFENDANT took money in connection with DEFENDANT'S illegal conduct; and

9    (f) For a JUDGMENT granting any other and further relief as the Court may deem

10    appropriate.

11    Dated this ____ day of July, 2008.

12

13                                    Respectfully submitted,

14                                    HARDY MYERS
                                      Attorney General

15

16                                    Thomas K. Elden OSB #79036

17                                    Senior Assistant Attorney General
                                      Of Attorneys for Plaintiff

18                                    Oregon Department of Justice
                                      1162 Court Street, N.E.

19                                    Salem, OR 97301-4096
                                      thomas.elden@doj.state.or.us

20                                    Tel:    (503) 934 4420
                                      Fax:    (503) 378-5017

21

22

23

24

25

26

Page 18 - COMPLAINT JUSTICE-#276931-v1- July 2, 2008

Certified to be a true and correct copy
of the original and of the whole thereof.

Assistant Attorney General

1

2

3                 IN THE CIRCUIT COURT OF THE STATE OF OREGON

4                        FOR THE COUNTY OF LINCOLN

5    STATE OF OREGON ex rel. HARDY          Case No. 082810
     MYERS, Attorney General for the State of
6    Oregon,                                 PLAINTIFF'S VERIFIED PETITION FOR,
                                             PROVISIONAL PROCESS, and ORDER TO
7                 Plaintiff,                 SHOW CAUSE

8          v.                                [ORCP 79 and 83 and ORS 166.725(5)]

9    SIMPLE.NET, INC., f/k/a DIAL-UP         [REQUEST FOR TELEPHONE TESTIMONY
     SERVICES, INC., d/b/a SIMPLE.NET, an    UNDER ORS 45.400]
10   Arizona Corporation

11                Defendant.

12

13                          PROVISIONAL PROCESS

14                      AND ORDER TO SHOW CAUSE

15         Plaintiff by and through Hardy Myers, Attorney General for the State of Oregon,

16   petitions pursuant to ORCP 79 and 83, and ORS 166.725(5)[1] for issuance of:

17         1)    **PROVISIONAL PROCESS in the form of a PRELIMINARY INJUNCTION**

18   enjoining the above named defendant, its agents, employees, and all other persons in possession

19   or control of defendant's property who have notice of the PRELIMINARY INJUNCTION:

20

21   [1]    ORS 166.725(5) The Attorney General, any district attorney or any state agency having
22   jurisdiction over conduct in violation of a provision of ORS 166.715 to 166.735 may institute
     civil proceedings under this section. In any action brought under this section, the circuit court
23   shall give priority to the hearing and determination. Pending final determination, the circuit court
     may at any time enter such injunctions, prohibitions or restraining orders, or take such actions,
24   including the acceptance of satisfactory performance bonds, as the court may deem proper. The
     Attorney General, district attorney or state agency bringing an action under this section may be
25   awarded, upon entry of a judgment in favor of the state, costs of investigation and litigation,
     reasonably incurred. Amounts recovered may include costs and expenses of state and local
26   governmental departments and agencies incurred in connection with the investigation or
     litigation.

Page 1 -    PLAINTIFF'S VERIFIED PETITION FOR PROVISIONAL PROCESS, AND
            ORDER TO SHOW CAUSE    JUSTICE-#315749-v1-

(a)   From removing, or in any way interfering with, or destroying the books, records, papers, receipts, lists of names, notebooks, contracts, ledgers, checks, or any other document or computer generated disk, tape or other electronic data now in the defendant's possession or subject to the control of the defendant, relating to defendant's activities or any part of defendant's business affairs, directly or indirectly to soliciting for internet access customers in Oregon by use of activation checks and for billing those customers since January 1, 2003;

(b)   From cashing checks, money orders, or cashing in stock, brokerage, or other investment accounts in defendant's possession or subject to their control, unless instructed to do so by a court of record unless the sum of $100,000 is set aside for eventual seizure by plaintiff or a bond posted for that amount;

(c)   From transferring, conveying or encumbering any assets, cash, money or things of value received or to be received by defendant, unless instructed to do so by a court of record for any amount under the sum of $100,000.00;

(d)   From transferring, conveying, removing or withdrawing any assets, cash, money, or things of value from defendant's assets and receivables, unless the sum of $100,000 is set aside for eventual seizure by Plaintiff or a bond posted for that amount, located in defendant's possession, any bank account, stock, brokerage or other investment account in which defendant has an interest, ownership or control including, but not limited to, accounts nominally in the name of another, unless instructed to do so by a court of record; and

(e)   Requiring any financial institution holding defendant's assets upon request of plaintiff to provide information as to the assets of defendant held at the institution.

Page 2 -    PLAINTIFF'S VERIFIED PETITION FOR PROVISIONAL PROCESS, AND
ORDER TO SHOW CAUSE   JUSTICE-#315749-v1-

(2)     **A PRELIMINARY INJUNCTION** enjoining the above named defendant, its

officers, agents and employees:

(a)     From using activation checks to solicit for business in Oregon; and

(b)     From collecting any money from customers who were signed up for dial up

internet access or any other service through the deposit of an activation check.

(3)     An **ORDER** requiring defendant to appear in the Circuit Court for the State of

Oregon for Lincoln County, in order to show cause, if any, why the relief requested in this

PETITION should not continue during the pendency of the underlying claims.

(4)     An **ORDER** permitting plaintiff and defendant limited telephone testimony

pursuant to the requirements of ORS 45.400 at the Preliminary Injunction Hearing for witnesses

residing outside Lincoln County.

The following information is provided pursuant to ORCP 83A(1)-(13):

(1)     The place of business of defendant, to the best of plaintiff's knowledge is:

(a)     Simple.Net, Inc. 4710 N Falcon DR #224, Mesa, Arizona 85215.

(2)     The underlying claims are violations of ORS 166.715 et. seq. as set forth in

Plaintiff's Complaint and Claim for Relief.  They are not based on consumer

transactions in the sense of ORCP 83, and no provisional process in a consumer

good is sought;

(3)     Provisional process in the form of a Preliminary Injunction is requested as set

forth herein;

(4)     Plaintiff's claim to provisional process is based upon entitlement to possession on

behalf of the prosecution and the victim or victims harmed by the illegal business

practices of defendant;

Page 3 -     PLAINTIFF'S VERIFIED PETITION FOR PROVISIONAL PROCESS, AND
             ORDER TO SHOW CAUSE     JUSTICE-#315749-v1-

1

2

(5) Plaintiff's claim to provisional process is based upon this petition, supporting affidavits and exhibits and the Complaint and Claim filed herein;

3

4

(6) Upon information and belief the claimed property is wrongfully held by defendant in cash or a bank account and/or some fashion not currently known;

5

6

7

(7) The claimed property has not been taken by any public authority for a tax, assessment or fine;

8

(8) Defendant has not waived its right to be heard;

9

(9) Provisional process is not based on a bulk transfer;

10

11

12

13

(10) Facts tending to establish that there is a substantial danger of concealment or transfer is set forth in the attached affidavits of Department of Justice Financial Fraud/Consumer Protection Investigator Dale Geiger and Senior Assistant Attorney General Thomas K. Elden;

14

15

16

17

(11) Facts tending to establish that without restraint, immediate and irreparable loss will occur is also set forth in the attached affidavits of Dale Geiger and Thomas K. Elden and Complaint and Claim filed herein; and,

18

19

20

(12) For the reasons set forth in the petition, supporting affidavits and exhibits, and the Complaint and Claim filed herein, there is no reasonable probability defendant can establish a successful defense to the underlying claims.

21

Pursuant to ORS 22.010, the state need not post the bond required by ORCP 82.

22

23

24

25

26

In support of this petition, plaintiff relies upon the Complaint and Claim filed herein, together with the attached affidavits of Thomas K. Elden, Dale Geiger, and two affidavits of the owners of the White Horse Coffee and Tea Company as representative of victims, and a memorandum of authorities.

Page 4 -    PLAINTIFF'S VERIFIED PETITION FOR PROVISIONAL PROCESS, AND ORDER TO SHOW CAUSE    JUSTICE-#315749-v1-

1    The foregoing is true and correct to the best of my knowledge, information and belief,

2    and for those reasons the relief is sought herein.

3    Dated this July 2, 2008.

4                                            Respectfully submitted,

5                                            HARDY MYERS
                                             Attorney General
6

7

8                                            Thomas K. Elden #79036
                                             Senior Assistant Attorney General
9                                            Financial Fraud/Consumer Protection Section
                                             Civil Enforcement Division
10                                           Department of Justice
                                             1162 Court Street, N.E.
11                                           Salem, OR 97310-0605
                                             503 934 4420
12                                           Of Attorneys for Plaintiff

13

    SUBSCRIBED AND SWORN to before me this 2nd day of July, 2008.
14

15

16                                           NOTARY PUBLIC OF OREGON
                                             My Commission Expires: 12/20/09
17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S VERIFIED PETITION FOR PROVISIONAL PROCESS, AND
                  ORDER TO SHOW CAUSE    JUSTICE-#315749-v1-

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-4732

Certified to be a true and correct copy
of the original and of the whole thereof.

_____
Assistant Attorney General

STATE OF OREGON
LINCOLN COUNTY COURT
FILED

2008 JUL -3 PM 1: 53

ENTERED

1

2

3

4        IN THE CIRCUIT COURT OF THE STATE OF OREGON

5          FOR THE COUNTY OF LINCOLN

| | |
|---|---|
| 6  STATE OF OREGON ex rel. HARDY<br>MYERS, Attorney General for the State of<br>7  Oregon, | Case No. 082810 |
| | ORDER TO SHOW CAUSE FOR<br>PRELIMINARY INJUNCTION AND<br>PROVISONAL PROCESS |
| 8          Plaintiff, | |
| 9      v. | [ORCP 79 and 83 and ORS 166.725(5)] |
| 10  SIMPLE.NET, INC., f/k/a DIAL-UP<br>SERVICES, INC., d/b/a SIMPLE.NET, an<br>11  Arizona Corporation | |
| 12          Defendants. | |
| 13 | |

14

15
        IT IS ORDERED that defendant shall appear before this court at the hour of 9:00 on

16
the 25th day of July, 2008 and show cause, if any there be, why a preliminary injunction should

17

18
not be issued enjoining such activity and granting Provisional Process as described in the

19
Verified Petition for Provisional Process and Order to Show Cause until the trial of this case.

20
Plaintiff and defendant may file affidavits with the court and may present testimony at the show

21
cause hearing. If defendant fails to appear at the show cause hearing set forth above, the court

22
will order issuance of the specific injunctive relief and provisional process sought in the

23
Petition. Plaintiff and defendant may have limited use of telephone testimony at the

24
preliminary injunction hearing for witnesses residing outside Lincoln County pursuant to the

25
requirements of ORS 45.400.

26

Page 1 –   ORDER TO SHOW CAUSE  JUSTICE-#315888-v1-

THE COURT FINDS:

1.    That the affidavits of Thomas K. Elden and Dale E. Geiger and the owners of the
White Horse Coffee and Tea Company, submitted in support of the Verified
Petition for Provisional Process, and Order to Show Cause, sufficiently set forth
facts in support this Order; and

2.    That plaintiff is not required to post bond, pursuant to ORS 22.010.

IT IS FURTHER ORDERED that the petition, together with the affidavits submitted in support of the application Provisional Process, and this Order to Show Cause shall be promptly served on defendant or through counsel for defendant if he will accept service.

This Order shall expire by its own terms at the conclusion of the time set for the show cause hearing or any continuance date thereof upon good cause shown for the continuance or upon the issuance of a Preliminary Injunction.

Dated this 3ʳᵈ July, 2008 at   1:50   o'clock pm .

Shuyl Bachent
Circuit Court Judge

SUBMITTED BY:
Thomas K. Elden
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97310
(503) 934 4420
thomas.elden@doj.state.or.us

Page 2 –   ORDER TO SHOW CAUSE   JUSTICE-#315888-v1-

Certified to be a true and correct copy
of the original and of the whole thereof.

Assistant Attorney General

1

2

3

4
IN THE CIRCUIT COURT OF THE STATE OF OREGON

5
FOR THE COUNTY OF LINCOLN

6
STATE OF OREGON, ex rel HARDY          Case No. 082810
MYERS, Attorney General for the State of
Oregon,                                 MEMORANDUM IN SUPPORT OF
7                                        PLAINTIFF'S VERIFIED PETITION FOR,
           Plaintiff,                    PROVISIONAL PROCESS, and ORDER TO
8                                        SHOW CAUSE

9      v.                                [ORCP 79 and 83 and ORS 166.725 (5)]

10
SIMPLE.NET INC., f/k/a DIAL-UP          [REQUEST FOR TELEPHONE TESTIMONY
SERVICES, INC., d/b/a SIMPLE.NET, an    UNDER ORS 45.400]
11
Arizona Corporation

12         Defendant

13

14      This memorandum supports Plaintiff's Verified Petition for Provisional Process and

15
Order to Show Cause pursuant to ORCP 79 and 83 and ORS 166.725(5).  Plaintiff contends there

16
is no reasonable probability that SIMPLE.NET (hereinafter "Defendant")  can establish a

17
successful defense to Plaintiff's claim alleging violations of the Oregon Racketeer Influenced

18
and Corrupt Organization Act, ORS 166.715 *et seq.*

                    **INTRODUCTION AND SUMMARY OF FACTS**

19
                                    1.

20
       Further Plaintiff alleges that Defendant and others in concert with Defendant caused at

21
least 195,480 solicitations to be mailed to Oregon businesses and non-profits.    These

22
solicitations were to sell Defendant's dial-up internet access service and were comprised of

23
"solicitation" checks also known as "activation" or "live" checks (hereinafter generally

24
"checks").   Deposit of a check by the recipient was alleged by Defendant to create a contract for

25
Defendant's internet access service.    While solicitations ceased in November, 2005 after a

26

MEMORANDUM IN SUPPORT OF PLAINTIFF'S VERIFIED PETITION FOR          1
PROCESS, ORDER TO SHOW CAUSE
ERL/#315724
                          Department of Justice
                          1162 Court Street NE
                          Salem, OR 97301-4096
                            (503) 378-4732

1   warning issued to Defendant by the Oregon Department of Justice in September 2005,

2   collections of money from deceived Oregon businesses and non-profits continued and apparently

3   still continue.   Defendant has resisted efforts to discover the names of its Oregon customers.

4        Once the check was deposited, Defendant caused the recipient to be billed monthly.

5   Billing was generally through the recipient's Local Exchange Carrier ("LEC") whereby charges

6   would appear on the recipient's phone bill.  In other cases the recipient was billed through

7   Automated Clearing House ("ACH") charges whereby the amount was debited directly from the

8   recipient's checking account.  In some cases if unable to place charges on the phone bill or make

9   ACH charges to a recipient's checking account, Defendant mailed invoices to the recipient.

10       If the check was deposited by the recipient, a follow up "Welcome Letter" with general

11   instructions how to access the internet service was allegedly sent to the recipient by Defendant.

12   A number for more information or "to cancel" was provided.  Customers, either small businesses

13   or non profits, who had deposited the check in normal course and discarded or disregarded any

14   accompanying information also did not recognize, assuming it was sent, anything about the

15   subsequent welcome mailing sufficient to open it and be aware of its contents.

16       Defendant was permanently prohibited by a Federal District Court in Arizona in a 2001

17   settlement with the Federal Trade Commission from failing to disclose, clearly and

18   conspicuously on the front of any solicitation check or on the front of any stub attached to the

19   check a statement notifying the payee that the check is part of a "solicitation" or that by cashing

20   the check, the payee would become obligated to pay for a good or service.   Further Defendant

21   was prohibited from failing to disclose, again clearly and conspicuously, a statement above the

22   endorsement line on the back of the check that notified the payee of the amount and frequency of

23   the charge that would be imposed if the check were deposited or endorsed.

24       From the experience of Oregon small businesses and non profits the required Federal

25   disclaimers were not clear and conspicuous and failed to alert many Oregon recipients of the

26   charges that would be incurred or that the recipient was agreeing to pay for a service that the

MEMORANDUM IN SUPPORT OF PLAINTIFF'S VERIFIED PETITION FOR          2
PROCESS, ORDER TO SHOW CAUSE
ERL/#315724                      Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-4732

1   recipient did not want or need.   Checks sent to businesses are often deposited with minimal

2   regard for accompanying apparently useless information and sometimes deposited without

3   signature endorsement.  In Oregon for the years 2003, 2004 and 2005 a total 2162 customers

4   deposited the check but only approximately 21 or less than one (1) per cent ever used the service

5   from Oregon and were presumably for the most part Oregonians.   Customers were billed for a

6   service only a fraction ever attempted to use and the vast remainder apparently did not realize

7   they had contracted for internet service when they cashed or deposited the solicitation check.

8                                           **ARGUMENT**

9                                                2.

10                                      Applicable Statutes

11   Racketeer Influenced and Corrupt Organization Act

12   ORS 166.715 provides in pertinent part:

13

14        (2) "Enterprise" includes any individual, sole proprietorship, partnership, corporation,
           business trust or other profit or nonprofit legal entity, and includes any union, association
15        or group of individuals associated in fact although not a legal entity, and both illicit and
           licit enterprises and governmental and nongovernmental entities.

16
          (4) "Pattern of racketeering activity" means engaging in at least two incidents of
17        racketeering activity that have the same or similar intents, results, accomplices, victims or
           methods of commission or otherwise are interrelated by distinguishing characteristics,
18        including a nexus to the same enterprise, and are not isolated incidents, provided at least
           one of such incidents occurred after November 1, 1981, and that the last of such incidents
19        occurred within five years after a prior incident of racketeering activity. Notwithstanding
           ORS 131.505 to 131.525 or 419A.190 or any other provision of law providing that a
20        previous prosecution is a bar to a subsequent prosecution, conduct that constitutes an
21        incident of racketeering activity may be used to establish a pattern of racketeering
           activity without regard to whether the conduct previously has been the subject of a
22        criminal prosecution or conviction or a juvenile court adjudication, unless the prosecution
           resulted in an acquittal or the adjudication resulted in entry of an order finding the youth
23        not to be within the jurisdiction of the juvenile court.

24        ***

25

26

MEMORANDUM IN SUPPORT OF PLAINTIFF'S VERIFIED PETITION FOR              3
PROCESS, ORDER TO SHOW CAUSE
ERL/#315724                          Department of Justice
                                     1162 Court Street NE
                                     Salem, OR 97301-4096
                                       (503) 378-4732

1   (6) "Racketeering activity" includes conduct of a person committed both before and after
    the person attains the age of 18 years, and means to commit, to attempt to commit, to
2   conspire to commit, or to solicit, coerce or intimidate another person to commit:

3           (a) Any conduct that constitutes a crime, as defined in ORS 161.515, under any of
            the following provisions of the Oregon Revised Statutes:
4

5   ORS 166.720 provides in pertinent part:

6
        (1) It is unlawful for any person who has knowingly received any proceeds derived,
7       directly or indirectly, from a pattern of racketeering activity or through the collection of
        an unlawful debt to use or invest, whether directly or indirectly, any part of such
8       proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of
        any title to, or any right, interest or equity in, real property or in the establishment or
9       operation of any enterprise.

10
        (2) It is unlawful for any person, through a pattern of racketeering activity or through the
11      collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest
        in or control of any real property or enterprise.
12

13       (3) It is unlawful for any person employed by, or associated with, any enterprise to
        conduct or participate, directly or indirectly, in such enterprise through a pattern of
14      racketeering activity or the collection of an unlawful debt.

15      (4) It is unlawful for any person to conspire or endeavor to violate any of the provisions
        of subsections (1), (2) or (3) of this section.
16

17  ORS 166.725 provides in pertinent part:

18      (1) Any circuit court may, after making due provision for the rights of innocent persons,
        enjoin violations of the provisions of ORS 166.720 (1) to (4) by issuing appropriate
19      orders and judgments, including, but not limited to:

20          (a) Ordering a divestiture by the Defendant of any interest in any enterprise,
            including real property.
21

22          (b) Imposing reasonable restrictions upon the future activities or investments of
            any Defendant, including, but not limited to, prohibiting any Defendant from
23          engaging in the same type of endeavor as the enterprise in which the Defendant
            was engaged in violation of the provisions of ORS 166.720 (1) to (4).
24

25          (c) Ordering the dissolution or reorganization of any enterprise.

26

MEMORANDUM IN SUPPORT OF PLAINTIFF'S VERIFIED PETITION FOR            4
PROCESS, ORDER TO SHOW CAUSE
ERL/#315724                        Department of Justice
                                   1162 Court Street NE
                                   Salem, OR 97301-4096
                                   (503) 378-4732

1

(d) Ordering the suspension or revocation of a license, permit or prior approval granted to any enterprise by any agency of the state.

2

3

(e) Ordering the forfeiture of the charter of a corporation organized under the laws of this state, or the revocation of a certificate of authority authorizing a foreign corporation to conduct business within this state, upon finding that the board of directors or a managerial agent acting on behalf of the corporation, in conducting the affairs of the corporation, has authorized or engaged in conduct in violation of ORS 166.720 (1) to (4) and that, for the prevention of future criminal activity, the public interest requires the charter of the corporation forfeited and the corporation dissolved or the certificate of authority revoked.

4

5

6

7

8

(2) All property, real or personal, including money, used in the course of, derived from or realized through conduct in violation of a provision of ORS 166.715 to 166.735 is subject to civil forfeiture to the state. The state shall dispose of all forfeited property as soon as commercially feasible. If property is not exercisable or transferable for value by the state, it shall expire. All forfeitures or dispositions under this section shall be made with due provision for the rights of innocent persons . . .

9

10

11

\* \* \*

12

13

(5) The Attorney General, any district attorney or any state agency having jurisdiction over conduct in violation of a provision of ORS 166.715 to 166.735 may institute civil proceedings under this section. In any action brought under this section, the circuit court shall give priority to the hearing and determination. Pending final determination, the circuit court may at any time enter such injunctions, prohibitions or restraining orders, or take such actions, including the acceptance of satisfactory performance bonds, as the court may deem proper. The Attorney General, district attorney or state agency bringing an action under this section may be awarded, upon entry of a judgment in favor of the state, costs of investigation and litigation, reasonably incurred. Amounts recovered may include costs and expenses of state and local governmental departments and agencies incurred in connection with the investigation or litigation.

14

15

16

17

18

19

\* \* \*

20

21

(8) An investigative agency may bring an action for civil penalties for any violation of ORS 166.720 (1) to (4). Upon proof of any such violation, the court shall impose a civil penalty of not more than $250,000.

22

23

\* \* \*

24

25

(11)(a) Notwithstanding any other provision of law, a criminal or civil action or proceeding under ORS 166.715 to 166.735 may be commenced at any time within five years after the conduct in violation of a provision of ORS 166.715 to 166.735 terminates or the cause of action accrues. If a criminal prosecution or civil action or other

26

MEMORANDUM IN SUPPORT OF PLAINTIFF'S VERIFIED PETITION FOR     5
PROCESS, ORDER TO SHOW CAUSE
ERL/#315724

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-4732

1  proceeding is brought, or intervened in, to punish, prevent or restrain any violation of the
provisions of ORS 166.715 to 166.735, the running of the period of limitations prescribed
2  by this section with respect to any cause of action arising under subsection (6) or (7) of
this section which is based in whole or in part upon any matter complained of in any such
3  prosecution, action or proceeding shall be suspended during the pendency of such
prosecution, action or proceeding and for two years following its termination.

4

5      * * *

6  (12) The application of one civil remedy under any provision of ORS 166.715 to 166.735
shall not preclude the application of any other remedy, civil or criminal, under ORS
7  166.715 to 166.735 or any other provision of law. Civil remedies under ORS 166.715 to
166.735 are supplemental and not mutually exclusive.

8

9      * * *

10  (14) In a civil action brought under the provisions of this section by the Attorney General,
a district attorney or a state agency:

11

12      (a) The court may award reasonable attorney fees to the Attorney General, district
attorney or state agency if the Attorney General, district attorney or state
13      agency prevails in the action.

14  ORS 165.102 provides:
(1) A person commits the crime of obtaining execution of documents by deception if,
15  with intent to defraud or injure another or to acquire a substantial benefit, the person
obtains by means of fraud, deceit or subterfuge the execution of a written instrument
16  affecting or purporting to affect the pecuniary interest of a person.

17  (2) Obtaining execution of documents by deception is a Class A misdemeanor

18

19                              3.

20          Defendants Lack Defense to Avoid Injunctive Relief

21      From DOJ Investigator Dale Geiger's affidavit it is apparent that Defendant is in

22  violation of ORS 166.720 (3) and ORS 165.102, and there is no reasonable possibility Defendant

23  will establish a successful defense to the underlying claims in this action.

24  ///

25  ///

26  ///

MEMORANDUM IN SUPPORT OF PLAINTIFF'S VERIFIED PETITION FOR          6
PROCESS, ORDER TO SHOW CAUSE
ERL/#315724                    Department of Justice
                               1162 Court Street NE
                               Salem, OR 97301-4096
                               (503) 378-4732

1                                    5.

2                     Provisional Process is Appropriate

3          Defendant may still have thousands of dollars they took from consumers.  Defendant may

4    still be billing Oregon customers who were deceived into depositing their "activation" checks.

5    Whether Plaintiff can locate a bank account or other non-cash asset of Defendants, it is clear that

6    obtaining ORCP 83 provisional process[1] is necessary before assets including liquid cash assets of

7    the Defendants disappear prior to trial and final judgment.

8    _____
     [1] A. REQUIREMENTS FOR ISSUANCE

9
     To obtain an order for issuance of provisional process the Plaintiff shall cause to be filed with the
10   clerk of the court from which such process is sought a sworn petition and any necessary
     supplementary affidavits or declarations requesting specific provisional process and showing, to
11   the best knowledge, information, and belief of the Plaintiff, affiant or declarant that the action is
     one in which provisional process may issue, and:
12
     A.(1) The name and residence or place of business of the Defendant;
13
     A.(2) Whether the underlying claim is based on a consumer transaction and whether provisional
14   process in a consumer good is sought;

15   A.(3)(a) If the provisional process sought is claim and delivery, a description of the claimed
     property in particularity sufficient to make possible its identification, and the Plaintiff's estimate
16   of the value and location of the property;

17   A.(3)(b) If the provisional process sought is a restraining order, a statement of the particular acts
     sought to be restrained;
18
     A.(4) Whether the Plaintiff's claim to provisional process is based upon ownership, entitlement
19   to possession, a security interest or otherwise;

20   A.(5) A copy or verbatim recital of any writing or portion of a writing, if Plaintiff relies upon a
     writing, which evidences the origin or source of the Plaintiff's claim to provisional process;
21
     A.(6) Whether the claimed property is wrongfully detained by the Defendant or another person;
22
     A.(7) Whether the claimed property has been taken by public authority for a tax, assessment, or
23   fine;

24   A.(8) If the Plaintiff claims that the Defendant has waived the right to be heard, a copy of the
     writing evidencing such waiver and a statement of when and in what manner the waiver
25   occurred;

26

     MEMORANDUM IN SUPPORT OF PLAINTIFF'S VERIFIED PETITION FOR          7
     PROCESS, ORDER TO SHOW CAUSE
     ERL/#315724                        Department of Justice
                                        1162 Court Street NE
                                        Salem, OR 97301-4096
                                        (503) 378-4732

A.(9) Facts, if any, which tend to establish that there is a substantial danger that the Defendant or another person is engaging in, or is about to engage in, conduct which would place the claimed property in danger of destruction, serious harm, concealment, removal from this state, or transfer to an innocent purchaser;

A.(10) Facts, if any, which tend to establish that without restraint immediate and irreparable injury, damage, or loss will occur;

A.(11) Facts, if any, which tend to establish that there is substantial danger that the Defendant or another person probably would not comply with a temporary restraining order; and

A.(12) That there is no reasonable probability that the Defendant can establish a successful defense to the underlying claim.

B. PROVISIONAL PROCESS PROHIBITED IN CERTAIN CONSUMER TRANSACTIONS

No court shall order issuance of provisional process to effect attachment of a consumer good or to effect attachment of any property if the underlying claim is based on a consumer transaction. Provisional process authorized by Rule 85 may issue in consumer transactions.

C. EVIDENCE ADMISSIBLE; CHOICE OF REMEDIES AVAILABLE TO COURT

C.(1) The court shall consider the affidavit, declaration or petition filed under section A. of this rule and may consider other evidence including, but not limited to, an affidavit, a declaration, a deposition, an exhibit or oral testimony.

C.(2) If from the affidavit, declaration or petition or other evidence, if any, the court finds that a complaint on the underlying claim has been filed and that there is probable cause for sustaining the validity of the underlying claim, the court shall consider whether it shall order issuance of provisional process, as provided in section D. or E. of this rule, or a restraining order, as provided in section F. of this rule, in addition to a show cause order. The finding under this subsection is subject to dissolution upon hearing.

D. ISSUANCE OF PROVISIONAL PROCESS WHERE DAMAGE TO PROPERTY THREATENED

Subject to section B. of this rule, if the court finds that before hearing on a show cause order the Defendant or other person in possession or control of the claimed property is engaging in, or is about to engage in, conduct which would place the claimed property in danger of destruction, serious harm, concealment, removal from this state, or transfer to an innocent purchaser or that the Defendant or other person in possession or control of the claimed property would not comply with a temporary restraining order, and if Rule 82 A. has been complied with, the court shall order issuance of provisional process in property which probably would be the subject of such destruction, harm, concealment, removal, transfer, or violation. Where real property is subject to provisional process as provided by this section, the Plaintiff shall have recorded in the County Clerk Lien Record a certified copy of that order.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S VERIFIED PETITION FOR                8
PROCESS, ORDER TO SHOW CAUSE
ERL/#315724                            Department of Justice
                                      1162 Court Street NE
                                      Salem, OR 97301-4096
                                      (503) 378-4732

1  E. RESTRAINING ORDER TO PROTECT PROPERTY

2  Subject to section B. of this rule, where hearing on a show cause order is pending or where the
   court finds that because of impending injury, destruction, transfer, removal, or concealment of
3  the property in which provisional process is sought there is probable cause to believe that
   immediate and irreparable injury, damage, or loss to the Plaintiff is imminent, and if Rule 82 A.
4  has been complied with, the court in its discretion may issue a temporary order directed to the
   Defendant and each other person in possession or control of the claimed property restraining the
5  Defendant and each such other person from injuring, destroying, transferring, removing, or
   otherwise disposing of property and requiring the Defendant and each such other person to
6  appear at a time and place fixed by the court and show cause why such restraint should not
   continue during pendency of the proceeding on the underlying claim. Such order shall conform
7  to the requirements of Rule 79D. A restraining order under this section does not create a lien.

8  F. APPEARANCE; HEARING; SERVICE OF SHOW CAUSE ORDER; CONTENT; EFFECT
   OF SERVICE ON PERSON IN POSSESSION OF PROPERTY

9
   F.(1) Subject to section B. of this rule, the court shall issue an order directed to the Defendant
10 and each person having possession or control of the claimed property requiring the Defendant
   and each such other person to appear for hearing at a place fixed by the court and at a fixed time
11 after the third day after service of the order and before the seventh day after service of the order
   to show cause why provisional process should not issue. Upon request of the Plaintiff the hearing
12 date may be set later than the seventh day.

13 F.(2) The show cause order issued under subsection (1) of this section shall be served on the
   Defendant and on each other person to whom the order is directed.

14 F.(3) The order shall:

15 F.(3)(a) State that the Defendant may file affidavits or declarations with the court and may
   present testimony at the hearing; and
16
   F.(3)(b) State that if the Defendant fails to appear at the hearing the court will order issuance of
17 the specific provisional process sought.

18 F.(4) If at the time fixed for hearing the show cause order under subsection (1) of this section has
   not been served on the Defendant but has been served on a person in possession or control of the
19 property, and if Rule 82 A. has been complied with, the court may restrain the person so served
   from injuring, destroying, transferring, removing, or concealing the property pending further
20 order of the court or continue a temporary restraining order issued under section F. of this rule.
   Such order shall conform to the requirements of Rule 79 D. Any restraining order issued under
21 this subsection does not create a lien.

22 G. WAIVER; ORDER WITHOUT HEARING

23 If after service of the order issued under subsection F.(1) of this rule, the Defendant by a writing
   executed by or on behalf of the Defendant after service of the order expressly declares that
24 Defendant is aware of the right to be heard and does not want to be heard, that Defendant
   expressly waives the right to be heard, that Defendant understands that upon signing the writing
25 the court will order issuance of the provisional process sought so that the possession or control of
   the claimed property will be taken from the Defendant or another person, the court, subject to
26 section B. of this rule without hearing shall order issuance of provisional process.

   MEMORANDUM IN SUPPORT OF PLAINTIFF'S VERIFIED PETITION FOR         9
   PROCESS, ORDER TO SHOW CAUSE
   ERL/#315724              Department of Justice
                            1162 Court Street NE
                            Salem, OR 97301-4096
                             (503) 378-4732

1              7.

2     <u>Telephone Testimony for Witnesses Outside Lincoln County</u>

3         <u>Appropriate for Preliminary Injunction Hearing</u>

4         Plaintiff expects to have live witnesses and affidavits at any preliminary injunction

5     hearing.  For witnesses outside Lincoln County limited telephone testimony as generally

6     authorized by ORS 45.400 would be appropriate.

7         DATED this 2nd day of July, 2008.

8                              Respectfully submitted,

9

10                             Hardy Myers #64077
                               Attorney General

11

12
                               _____
13                             Thomas K. Elden, OSB #79036
                               Senior Assistant Attorney General
                               Of Attorneys for Plaintiff
14                             1162 Court Street NE
                               Salem, OR 97301-4096
15                             Telephone: (503) 934-4420
16                             Trial Attorney for Plaintiff
                               Thomas.elden@doj.state.or.us

17

18     _____

19     H. AUTHORITY OF COURT ON SUSTAINING VALIDITY OF UNDERLYING CLAIM;
       PROVISIONAL PROCESS; RESTRAINING ORDER

20     H.(1) Subject to section B. of this rule, if the court on hearing on a show cause order issued
       under section G. of this rule finds that there is probable cause for sustaining the validity of the
21     underlying claim and if Rule 82 A. has been complied with, the court shall order issuance of
       provisional process. The order shall describe with particularity the provisional process which
22     may be issued.

23     H.(2) Subject to section B. of this rule, if the court on hearing on a show cause order issued
       under section G. of this rule finds that there is probable cause for sustaining the validity of the
24     underlying claim but that the provisional process sought cannot properly be ordered, and if Rule
       82 A. has been complied with, the court in its discretion may continue or issue a restraining order
25     of the nature described in section F. of this rule. If a restraining order is issued, it shall conform
       to the requirements of Rule 79 D. A restraining order under this subsection does not create a lien.

26
       MEMORANDUM IN SUPPORT OF PLAINTIFF'S VERIFIED PETITION FOR          10
       PROCESS, ORDER TO SHOW CAUSE
       ERL/#315724                    Department of Justice
                                      1162 Court Street NE
                                      Salem, OR 97301-4096
                                      (503) 378-4732